UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BUFFALO WILD WINGS, INC.,**

      **Plaintiff,**                                Case No. 2:10-cv-335
                                                         JUDGE GREGORY L. FROST
      v.                                       Magistrate Judge Norah McMann King

**BW RINGS, LLC, et al.,**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' motion to stay (Doc. # 17), Plaintiff's memorandum in opposition (Doc. # 24), and Defendants' reply brief (Doc. # 26). For the following reasons, the Court **GRANTS** the motion to stay.

### I.  Background

On June 16, 2009, Buffalo Wild Wings, Inc. ("BWW") filed suit against Buffalo Wings & Rings, LLC ("BWR") and various "John Doe" franchisees of BWR in the District Court of Minnesota, alleging claims of trademark and trade dress infringement, false marketing, refuse registration of word mark application, refuse registration of design mark application, unfair competition, and deceptive trade practices.  (Doc. # 24, Ex. A.)  Thereafter, Plaintiff BWW withdrew a number of BWR's franchisees as defendants in the Minnesota suit because personal jurisdiction could not be established.  (Doc. # 17, 24, 26.)  On April 16, 2010 and April 19, 2010, Plaintiff BWW filed suit against various of these franchisees in Kentucky and Texas, respectively.  (Doc. # 24, Exs. B & C.)

On April 16, 2010, BWW filed suit in this Court against two other franchisees, BW

1

Rings, LLC ("BW Rings") and BWR OSU, LLC ("BWR OSU"). (Doc. # 1.) In response, Defendants filed its motion to stay (Doc. # 14), which is now ripe for consideration.

## II. Standard

Under the first-to-file rule, an action involving similar parties and issues that was filed previously in another federal court should generally proceed to judgment and the latter-filed suit should be stayed, dismissed, or transferred. *AmSouth Bank v. Dale*, 386 F.3d 763, 791 n.8 (6th Cir. 2004); *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 443, 437 (6th Cir. 2001). This rule exists to promote principles of comity and judicial economy. *See Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007); *Greene v. Ab Coaster Holdings, Inc.*, Nos. 2:10-cv-38; 2:10-cv-234, 2010 U.S. Dist. LEXIS 91671, at *9-10 (S.D. Ohio Aug. 6, 2010).

In addressing the application of this rule, a court is to consider three factors: (1) the chronology of the actions; (2) the parties involved; and (3) the similarity of the issues in each case. *Dewhurst v. Century Aluminum Co.*, No. 2:09-cv-1033, 2009 U.S. Dist. LEXIS 120014, at *6 (S.D. Ohio Dec. 23, 2009). Where consideration of these factors result in a finding that the two actions "substantially overlap" the court in the latter action may permit the first-filed action to proceed to judgment. *BSI Indust. v. Q.B. Johnson Mfg.*, No. C2-08-276, 2009 U.S. Dist. LEXIS 9089, at * 4-5 (S.D. Ohio Feb. 6, 2009). *See also Smith v. SEC*,129 F.3d 356, 361 (6th Cir. 1997) ("[w]hen a federal court is presented with such a duplicative suit, it may exercise its discretion to stay the suit before it, to allow both suits to proceed, or, in some circumstances, to enjoin the parties from proceeding in the other suit"). However, the court may also forego application of the rule where equity so demands. *See Certified Restoration Dry Cleaning*

*Network*, 511 F.3d at 551-52 (quoting *Zide Sport Shop*, 16 Fed. Appx. at 437) (stating that "[f]actors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping").

### III.  Discussion

Defendants argue that application of the first-to-file rule is appropriate here because the Minnesota action, being filed first, alleges similar issues against similar parties.  Accordingly, Defendants request a stay in the present proceedings until completion of the pending action in Minnesota.

Plaintiff BWW sets forth three reasons why this Court should find the first-to-file rule to be inapplicable.  First, BWW argues there is a lack of overlap between the parties because the defendants in the respective matters are different, as it is suing BWR, the franchisor, in Minnesota and BW Rings and BWR OSU, the franchisees, herein.  (Doc. # 24, at 12.)  Second, Plaintiff BWW argues that there is a lack of overlap between the claims and issues because there are independent acts of infringement by the franchisees named as Defendants in this matter.  (*Id*. at 13-14.)  Last, BWW argues that the Minnesota court's lack of jurisdiction over the Ohio franchisees in the first-filed action should be considered in applying the first-to-file rule.  (*Id*.)

Being the crux of Plaintiff BWW's argument, the Court addresses first the relationship between the claims of the first-filed suit and the instant matter.  In the Minnesota action, Plaintiff BWW brought suit against BWR, the franchisor.  As alleged in the first-filed action, the franchisor-defendant's wrongful conduct was its attempt to emulate an atmosphere and setting, or the "look and feel," of Plaintiff BWW.  (Doc. # 24, Ex. A.)  More specifically, Plaintiff BWW alleges that the franchisor changed the format of its restaurants to a family style restaurant and

3

sports bar, placed a heavy emphasis on the color yellow, used a buffalo-stylized image in a concentric circle, created an atmosphere that had a wide open interior with a spacious feel, emphasized sports and television, and, among other things, used various BWW food and drink promotions as their own.  Plaintiff BWW alleges that all of this conduct has given rise to actionable claims of trade dress and patent infringement and unfair and deceptive trade practices.  (*Id.*)

Plaintiff BWW alleges that the claims in the Minnesota action are distinct from those in this action because of five "independent acts of infringement" engaged in by the Defendant-franchisees herein: (1) their use of a "yellow circle" logo that the defendant-franchisor in the Minnesota action claims to be no longer using; (2) their use of distinguishable advertising practices; (3) Defendant-franchisee BW Rings' use of yellow T-shirts as part of its uniform; (4) Defendant-franchisee BWR OSU's use of a "college-aged" marketing theme that mirrors that of Plaintiff BWW, which is distinguishable from its franchisor's family restaurant approach at issue in the Minnesota action; and (5) the uniqueness presented by Defendant-franchisee BWR OSU's "close proximity" to Plaintiff BWW.  (*Id.*, at 13-14.)

While there may be some factual allegations that make the two actions distinguishable, the substantial overlap between the claims cannot be ignored.  Contrary to Plaintiff BWW's primary assertion, the use of the yellow circle logo is at the core of the Minnesota action.  In its case in Minnesota, Plaintiff BWW's chief complaint is that the defendant-franchisor, BWR, authorized its franchisees to use the yellow circle logo as part of its unfair and deceptive trade practices claim.  Similarly, Plaintiff BWW alleges that the defendant-franchisor should be precluded from design mark applications for a logo that either fails to specify a color or one that

4

seeks to employ the use of the color yellow, as it is the incorporation of the color yellow in regards to a buffalo-stylistic logo that is part of its unique trade dress.  (*Id*., Ex. A.)  As noted above, Plaintiff BWW tries to distinguish the instant matter on the basis that the franchisor-defendant in the Minnesota action is no longer using this logo.  However, by BWW's own concessions, the franchisor-defendant, while not currently reproducing the logo on *new* advertisements and promotions, has yet to advise its franchisees, *i.e.*, Defendants BWR Rings and BWR OSU, that the use of the *old* logo is no longer authorized.  (*Id*., Ex. B at 64-65.)  Thus, the Minnesota court will determine whether the use of a yellow circle buffalo-style logo by the defendant-franchisor is unlawful.  Plaintiff BWW asks this Court to make the same determination.

Further, Plaintiff BWW's attempt to distinguish the issues on the basis that the Defendant-franchisees employ a marketing theme and trade practices that uniquely infringe upon its trade dress is similarly unpersuasive.  On one hand, BWW alleges that the use of a family-based restaurant theme with an accompanying sports bar by the defendant-franchisor in the Minnesota action constitutes a trade dress infringement.  Likewise, as to the present matter, Plaintiff BWW alleges that Defendant-franchisee BWR OSU's use of a "college-aged" theme and Defendant-franchisee BWR Ring's use of yellow T-shirts as part of its uniform constitutes uniquely infringing trade practices.  While yet another artful attempt to provide distinction between the claims at issue in the two actions, the overlap between the claims presented in the two actions cannot be ignored.  It is BWR, as franchisor, and BWR Rings and BWR OSU's, as franchisees, overlapping conduct in creating an atmosphere and image revolving around the use of sports and television that allegedly "mirrors" the image of their competitor, BWW.  Consequently, the

Minnesota court will determine whether Plaintiff BWW has a unique trade dress that consists of this type of image and atmosphere and whether emulating that atmosphere constitutes an unfair or deceptive trade practice.  Plaintiff BWW asks this Court to make the same determination.

Because the claims Plaintiff BWW asks the Minnesota court and this Court to decide substantially overlap, a decision from this Court would not only tend to frustrate the legitimate aim of preserving judicial economy, as substantially the same evidence would be presented in both actions concerning the existence of Plaintiff BWW's alleged unique trade dress, but also it poses the possibility of inconsistent opinions.  Therefore, this Court believes that the concerns of judicial comity and resource preservation further support a finding of substantial overlap.

Having determined that the issues between the two actions substantially overlap, the Court will next determine the overlap of the parties.  For the first-filed rule to be applicable, both the issues and the parties need to "substantially overlap."  It follows that where the respective parties in the first-filed and latter-filed actions do not substantially overlap the fear of judicial inefficiency and inconsistency will no longer be applicable, as the latter court will proceed to judgment with little or no influence from the first-filed matter.  However, if the parties do substantially overlap, the need of the court in the latter-filed action to avoid rulings which entrench upon or inconsistently decide overlapping issues being addressed by another federal court is significant.

Plaintiff BWW argues that there is no precedent regarding the application of the first-filed rule to an instance where the defendants in the respective actions are franchisor and franchisee.  However, this Court finds no reason to depart from the logic underlying the rule's application.  In that regard, BWR, the as defendant-franchisor in the Minnesota action, and BW Rings and BWR

OSU, as Defendant-franchisees herein, while not identical, nevertheless substantially overlap. *See Elite Physicians Servs., LLC v. Citicorp Credit Servs., Inc.*, 2007 U.S. Dist. LEXIS 26954, at *9 (E.D. Tenn. Apr. 11, 2007) (stating that "[c]ourts generally hold that *privity* or *affiliation between/among defendants* is sufficient to find 'substantial overlap'") (emphasis added) (collecting cases).  As franchisees, BW Rings and BWR OSU maintain their authority to act under the trade name and dress from the licensing agreement with BWR, the defendant-franchisor.  While this Court is not suggesting that the franchising agreement creates an agency relationship binding the franchisor for the independent acts of infringement of its franchisees, the authority and ability to act as a franchisee is limited to the extent of the franchise agreement.  *See Oberlin v. Marlin American Corporation, et al.*, 596 F.2d 1322, 1327 (7th Cir. 1979) (stating that "[a licensing agreement] does not automatically saddle the licensor with the responsibilities under state law of a principal for his [licensee]").  Thus, if a franchisor is deemed to not have the contractual authority to issue their franchisee a license to conduct business in a particular fashion, *e.g.*, the use of a buffalo-stylized logo incorporating the color yellow, the franchisee has no authority to act in that particular fashion.  Conversely, if this Court were to enter a judgment permitting the use of such a logo by the franchisees and the court in Minnesota were to enter judgment precluding the franchisor from using the same, the inconsistency that this would pose is obvious.

     Plaintiff BWW also urges this Court to find the first-to-file rule to be inapplicable because the Minnesota court lacks personal jurisdiction over the franchisees named as Defendants in this action.  Thus, Plaintiff argues that the lack of jurisdiction in the first-filed action over BW Rings and BWR OSU should preclude the first-to-file rule from applying because this is the only forum

for it to obtain relief for the alleged additional injuries caused by the Defendant-franchisees. Pursuant to this logic, albeit not exclusively, the actions brought by Plaintiff against other franchisees in Kentucky and Texas were found to be outside the scope of the first-filed rule. *Buffalo Wild Wings, Inc. v. BWR McAllen, Inc.*, 2010 U.S. Dist. LEXIS 65051, at *6-7 (S.D. Tex. June 30, 2010) (stating that "the fact that the present defendants cannot be sued in the forum of the first-filed case is an additional reason for allowing this suit to proceed"); *Buffalo Wild Wings, Inc. v. Schanen Invs.*, No. 3:10-CV-259-H, slip op. at 2 (W.D. Ky. July 1, 2010) (stating that "the separate Kentucky forum may be the only appropriate jurisdiction to pursue Plaintiff's claims against the franchisees").

While the availability of jurisdiction in the first-filed forum is an important inquiry, here it is not the extraordinary circumstance that would weigh against enforcement of the first-to-file rule.  This is because the court in the second-filed action can choose to stay or to dismiss.  To avoid jeopardizing the rights of one of the parties involved, *i.e.*, the ability of an aggrieved party to pursue relief against a party not subject to the first-filed court's jurisdiction, the court in the second-filed action will generally issue a stay pending resolution of the first-filed action.  *See id.* (citing *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686, 691 (E.D. Tenn. 2005)). In the instant action, the Court deems the requested stay to be the appropriate remedy, as doing so will not place into jeopardy Plaintiff's ability to seek relief against the present franchisees for their alleged additional acts of infringement.

Accordingly, due to the substantial overlap between the claims and parties, the Court finds that it will preserve judicial resources and avoid potential inconsistencies by staying the present action, while nevertheless retaining jurisdiction, until completion of the Minnesota action.  If

there are any independent claims of infringement that survive the Minnesota court's decision, this Court will restore this action to its active docket for a decision on those claims.

## IV.  Conclusion

In light of the foregoing reasons, the Court **GRANTS** Defendants' motion to stay.  (Doc. # 17.)  The Clerk is **DIRECTED** to **ADMINISTRATIVELY CLOSE** this case.  The parties are **DIRECTED** to contact the Court within 14 days of completion of the first-filed action.  At that time, the Court will schedule a status conference to determine scheduling of the remaining claims at issue, if any.

**IT IS SO ORDERED**.

  **/s/ Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**